## Vaughan et al. v. Maynard et al.

April 20, 1943.

A. N. Cisco for appellants.

E. Poe Harris for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

The appellant, Allan Vaughan, is the leader of the minority faction of the congregation of the South Side United Baptist Church, sometimes called Neal's Chapel, in Catlettsburg. Vaughan was a member of the Church and its preacher for several years following its establishment in 1920. Some three or four years ago he became dissatisfied with the then preacher because he said he was too hotheaded and he withdrew his membership and became affiliated with another church. After the appellee, Walter Maynard, became the pastor of the South Side Church, Vaughan went before its congregation and confessed he had done wrong and was taken back into the Church. He soon became dissatisfied with Maynard's leadership, charging he was hotheaded and too independent. He contends also that Maynard and the majority of the congregation had departed from the faith of the United Baptist Church, and were therefore no longer entitled to use the Church property which had been deeded to the trustees of the Church, to be used by only those of the United Baptist faith. Vaughan's own statement as to what caused the disruption which was taken before the Mt. Carmel Association, as will be noted hereinafter, and which is the basis of this action, follows:

"Q-41. Now what were they voting on at that time? What was the question before the house? A. The house was voting on whether or not we should elect our pastor once a year, as the old ruling was, and whether we should have our regular business meeting once a month, which was held on the Saturday night before the third Sunday in the month and at which time the officers and deacons and the trustees and the clerk were all to be elected and take their offices—take charge of the office to which they were elected and whether the books should be turned over to the Clerk instead of the Pastor carrying them. All that was stated before the house to vote on.

"Q-42. And I believe you say the result of the vote was 33 one way and 27 the other? A. Yes, sir.

"Q-43. Following that vote what was done? A.

"Well, I don't suppose there was any thing done, some got sick over it and some got ashamed and some went home mad and some were laughing over it and different things."

There were charges also that some members of the congregation had been put out of the Church in an improper manner and that Maynard had been preaching tithing.

Shortly after the South Side Church was established in 1920, it became a member of the Mt. Carmel Association. It continued its affiliation with the Association until 1941, when it voted to withdraw from the Association though Vaughan and a few of his followers went there but were not recognized. Maynard and some of his followers were there also, but they did not attempt to take part in the meeting.

Article 3 of the Constitution of the Mt. Carmel Association provides:

"The members thus chosen and convened shall have no power to lord it over God's heritage, nor shall they have any clerical power over the churches, nor shall they infringe on the internal rights of any church in the Union."

Article 16 of the Constitution provides, among other things, that the Association shall have power to provide for the general union of the churches, to preserve inviolate a chain of communication with the churches, to give the churches all the necessary advice in matters of difficulty, and to inquire into the cause why churches fail at any time to represent themselves in the Association. Article 14 of the Constitution provides that the plan or form of government may be amended at any time by a majority of the Union. It is clear from the foregoing sections of the Constitution of the Association, which are the only ones pertinent to the subject, that it was never intended that the Association should have anything to do with the internal affairs of a member church. Thus it would appear that, though the Association is made up of United Baptist churches, it was intended each church should be governed as are Baptist churches generally. As pointed out in Thomas v. Lewis, 224 Ky. 307, 6 S. W. (2d) 255, Baptists hold that each separate, local Church is an independent body which governs itself according to the laws of Christianity as found in the New

Testament. They hold that they owe comity and fellowship to all, but allegiance and submission to none; and where there are differences in matters of opinion as to the management and control of the congregation, the majority shall decide. Generally speaking, the Baptist faith makes no recognition of an appeal from the will of the majority of a congregation to any ecclesiastical authority. We find no provision in the Constitution of the Mt. Carmel Association providing for such an appeal. The original purpose of the Association seems to have been to set up an advisory council for the membership churches and to give advice or assistance to individual churches when they became involved in difficulties.

We do not gather from the record that there have been any recent changes in the Constitution of the Association. There seems to have developed, however, a set of minutes which have been changed and modified from time to time, and which are directed toward the control by the Association of the affairs of member churches. These minutes appear under the general heading "The power and authority of an Association over the churches who are corresponding members is that of an 'Advisory Council,' therefore the Mount Carmel Association, by vote in general assembly, advises all churches in this Union to adhere to and practice by obeying each of the following Articles in letter and spirit." The minutes of the Association do not group these Articles with the Constitution, or as any part thereof, nor is there any showing that they were intended as amendments thereto. It was under Articles VIII and X of these minutes that the Association sought to settle a dispute between the Vaughan and Maynard factions of the South Side Church. These Articles follow:

"Art. VIII. If any church in this Union has a grievance that can not be settled in their own church, they shall then call in the Moderator of this association, who then shall appoint a committee of ordained ministers from said Association, not less than five or more than seven. They shall hear and determine grievances, and their counsel shall be final."

"Art. X. If there should arise in any church of this Association a disbanding of member or members, and the question would arise who would be title holder to the church property, they then shall

call in the Moderator of this Association, who shall have power to appoint a committee to make an investigation. The party that is guilty of breaking the Rules of Decorum of this Association will have no right to said property. The committee then will determine the guilty party and their decision will be final. It was moved and seconded that the Neal Chapel church shall have sixty days to try and settle their troubles and if they can't come to some agreement the Moderator shall call a Presbytery of ministers, not more than seven or less than five and shall try by the love of God that peace and love shall be restored and love will be in every heart.''

When at the end of 60 days the dispute between the two factions had not been settled, the Moderator promptly proceeded to attempt to right the matter. A notice under the name of Mt. Carmel Association United Baptists, Steven Adkins, Moderator, v. Walter Maynard, was prepared. This notice was directed only to Maynard. He refused to accept it and refused to let Adkins use the church house for his hearing. Thereupon Adkins tacked a notice on the church door advising those interested in the hearing to meet at the home of Ted Shivel. Only Vaughan and his cohorts attended the trial, and it seems that only Maynard and two or three of his followers had any knowledge of the hearing. Adkins' Ecclesiastical Presbytery found Maynard and his associates to be guilty of insubordination under the Seventh Article, which provides:

''Ordinarily speaking, the body present constitutes the Church, unless they are doing so by force or constraint, then in that event all their acts are illegal. It is not permissible to 'Lord it over God's heritage.' (The majority must rule).''

The Ecclesiastical Presbytery found also that Maynard at the aforementioned business meeting held in June, 1941, denounced the fundamental laws of the Church (the Synopsis of Faith and the Rules of Decorum); that he had violated the rules of government for the Church and the Association, that his reputation for good morals ''are bad,'' and that he was guilty of egotism; that he and his followers were no longer followers of the Neal Chapel Church and in good standing, but ''in disorder,'' and could be restored only in the Bible way; that he was no longer a minister of the United Baptist faith; and that:

"Brother B. Hayes and his following who voted to stand upon, and obey, the fundamental laws of the United Baptist Faith, which vote was recorded at the June Business Meeting 1941, are found to be orthodox in the United Baptist Faith, and are the true members composing the Neal Chapel Church, and are the legal owners and entitled to the immediate possession of all church records and church property, thereunto pertaining, and to change the records in membership, and all business complying with this judgment."

Vaughan and his followers, who instituted this action to get control of the church property, challenge the judgment of the chancellor in favor of the appellees. We believe the judgment to be correct for several reasons, which will be noted hereinafter.

The Constitution of the Mt. Carmel Association makes no provision for such a proceeding as was had by Adkins and his Ecclesiastical Presbytery, and even if this particular character of Baptist faith recognizes a Presbytery or Ecclesiastical form of Church government, the original Constitution of the Association was not so amended as to provide for it.

But, if it be conceded that the minute Articles recognize and provide for such a form of government, then it must be admitted that the last part of Article X, heretofore quoted, gave the moderator and his Presbytery of ministers only the authority to "try by the love of God that peace and love shall be restored and love will be in every heart."

The appellants must fail for a third reason, even though it be conceded that Adkins' Ecclesiastical Presbytery had the right to hold a trial, because the notice was directed only to Maynard, and not to the majority members of the congregation. Not only was Maynard put out of the church, but the same action was taken in respect to all of his followers.

Before closing this opinion let us look to the evidence in the case. The Ecclesiastical Court charged that the division of the Neal Chapel Church resulted from a vote on the following proposition:

"Shall the New Testament doctrine be taught as the true and only law under the Grace covenant, for man to believe, obey and follow, or may he believe

and obey other doctrines." "Shall we continue in the United Baptist Faith, based upon and taken from the Word of God, handed down by our forefathers, or will we deviate and mix this Faith with other opposing faiths."

The Court charged also that, after those questions had been debated, 27 of the members voted in the affirmative and 33 voted in the negative, thus rejecting the Baptist faith. This, of course, had reference to the business meeting held in June, 1941. Vaughan's own testimony makes this charge absurd as do the minutes of the meeting. The foregoing quotation of Vaughan's testimony as to what was being voted on shows that only minor matters of internal management of the Church were being considered, and that by no stretch of the imagination could it be said that fundamental doctrines of the Baptist belief were up for consideration. We might say in this connection that there is an overwhelming preponderance of proof in favor of Maynard. Only a few members of the Church testified for Vaughan's side, with some 40 or more testifying on Maynard's side. The substance of the testimony for Maynard was that he did not preach tithing, that no members had been improperly ousted from the Church, and that he preached and taught the orthodox beliefs of the United Baptist Church. There is every indication from the record that the majority of the congregation of the Neal Chapel Church have been conducting church affairs in an orderly and proper manner. Vaughan seems to be one of the principal trouble makers. He had withdrawn from the church at one time because he said the then preacher was hotheaded, and his principal charge against Maynard seems to be that he is hotheaded and acts independent.

It is our view that the judgment should be and it is affirmed.